## WILLIAMS *v.* THE STATE.

1. Remarks made by the accused in the nature of threats against the decedent, though somewhat remote from the occasion upon which the decedent was killed, are generally admissible in evidence, the jury being judges of their probative value.

2. Certain policies of insurance, one of them a fire policy on the residence of the decedent, the husband of the accused, for whose murder she was being tried, and the other a policy on his life, in which she was named as beneficiary, were admissible in evidence to show motive. And they were admissible without proof of the execution of the documents, as the jury were authorized to find that they were in her custody; from which it was inferable that she felt an interest in the happening of the events upon which both would become payable.

3. The statement by the solicitor-general that a certain policy of insurance which was offered in evidence came from the possession of the defendant did not require the grant of a mistrial on the ground that it was prejudicial to the defendant, where the solicitor-general, immediately after the motion for a mistrial was made, stated that he expected to show that the policy came from a trunk which the defendant took out of the house while it was burning. The jury could not but have understood from the last statement of the solicitor-general that he insisted that the policy in question came from the possession of the defendant, and that he expected to offer evidence to prove this.

4. Evidence otherwise relevant and material, obtained by examining articles of personal property and certain documents which were found in a trunk of the accused, was not inadmissible on the ground that the trunk had been illegally seized, or that to admit such documentary evidence would be compelling the accused to produce evidence against herself.

5. The policies were not inadmissible in evidence because of the objection based upon the ground that they were not shown to be in force. It is not stated in this ground of the motion that as a matter of fact the policies were not in force, and the court will not look to other parts of the record to ascertain the truth of the ground upon which the objection was based. Whether the evidence would have been inadmissible had it been made to appear that the policies were not in force, is not ruled.

6. It was not error to admit in evidence the trunk of the defendant, containing various articles, brought from the residence of the accused and her husband, which was burned on the night the husband was killed, the trunk and its contents having some relevancy to certain material issues in the case.

7. One of the questions for decision being whether the trial judge erred in refusing to grant a mistrial on account of certain remarks made by the solicitor-general, and this court being equally divided on the question, Russell, C. J., and Atkinson and Hill, JJ., being of the opinion that the court erred in not granting a mistrial, and Beck, P. J., and Gilbert and Hines, JJ., being of the opinion that, while the remarks of the solicitor-general were improper, under the facts of this case the failure to declare a mistrial was not such error as to require a reversal, the judgment stands affirmed by operation of law.

8. It is not a good exception to a charge as given that the court failed to charge in connection therewith some other principle of law or lay down some other rule of evidence.

9. The court did not err in instructing the jury that the expression "reasonable doubt" means "what the words necessarily imply; they do not mean an entire absence of doubt, no doubt at all, nor do they mean an entire want of doubt, nor do they mean a whimsical, captious, or factitious doubt, but, as the words imply, a reasonable doubt."

10. The excerpt from the charge excepted to on the ground that it contained an intimation on the part of the court to the jury that they were expected to find the defendant guilty was not open to exception upon that ground.

No. 3476. SEPTEMBER 7, 1923.

Murder. Before Judge Gower. Crisp superior court. October 14, 1922.

*Max E. Land, Jesse Grantham,* and *A. J. & J. C. McDonald,* for plaintiff in error.

*George M. Napier, attorney-general, J. B. Wall, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

BECK, P. J.　Effie Williams was indicted for the murder of W. W. (Willie) Williams, it being charged that she feloniously killed the decedent by shooting him with a pistol. Upon the trial of the case the jury returned a verdict of guilty, with recommendation. The defendant moved for a new trial, which was refused, and she excepted.

1. The original motion for new trial contains the usual general grounds, that the verdict was contrary to law and the evidence. The first ground of the amendment to the motion assigns error upon the ruling of the court in permitting a witness for the State, Clarence Steed, over the objection that his testimony was irrelevant, immaterial, and "too remote to have any probative value," to state in substance the conversation which he had with the accused. He testified that he said to her, "I hear that you are married," and she replied, "Yes, I am married, but that don't mean anything, because he will soon be dead anyhow, he is old and can't stand much. The first wife didn't know how to kill him, but wait till I get his policies and everything fixed, and I am going to show him something. I am going to kill him with kindness." This conversation occurred six or seven months before the decedent was killed. It was not error to admit this testimony. Whether the accused made these remarks seriously, or whether they had any probative value, were questions for the jury. The house of the decedent and his wife was destroyed by fire on the night of the killing. There was a fire-insurance policy covering

the house, and a policy of insurance on the life of the husband, the decedent, payable to the accused. The references to the policies of insurance may have had significance in the opinion of the jury, and they may have given weight to the remarks that were made. If they were mere flippant remarks to which no weight should be attached, the jury could have disregarded them and have looked to the evidence in the case in their efforts to ascertain whether the accused was guilty or not.

2. A policy of fire insurance on the residence of the decedent and his wife, the accused, and the policy of insurance on the life of the decedent, in which the accused was named as beneficiary, were admissible in evidence under the circumstances of this case, without proof of their execution. These policies were found in a trunk which the jury were authorized to find from the evidence was the property of the accused, and it was in the house at the time it was burned. Ordinarily, proof of the execution of such documents must be shown, in order to render them admissible in evidence; but the jury were authorized to find in this case that the accused expected to collect on each of these policies, that she had them in her custody, and that they were collectible upon the happening of the events which took place that night, — that is, the burning of the house and the death of her husband. They were admissible to show motive.

3. When the life-insurance policy was offered in evidence, counsel for the State, the solicitor-general, stated that this policy came from the possession of the defendant; and counsel for the defendant moved the court to declare a mistrial, because of this statement and its prejudicial effect upon the jury trying the case. Thereupon the solicitor-general stated that he expected to show that the policy came from the trunk belonging to the defendant, which she recovered from the house while it was burning. Thereupon the court refused to declare a mistrial, and error is assigned upon this ruling. The remark of the solicitor-general to the effect that the policy came from the possession of the defendant did not require the grant of a new trial, in view of the fact that he immediately stated that he expected to prove that it came from the trunk of the accused.

4. The sheriff had taken possession of the trunk alleged to be the property of the defendant, and it was brought into the court-

room during the trial and there opened, and the policies were taken out. The court did not err in admitting these policies in evidence over the objection that their " production was illegal and contrary to the laws of Georgia and of the United States, which guarantee a person against illegal search and seizure and protect him from being compelled to produce evidence against himself." The defendant was not compelled to produce this evidence against herself. The officers of the law had previously seized the trunk; and even if the seizure was illegal, evidence of its contents, so far as it was material in the trial then being had, was admissible under several decisions made by this court.

5. The policies were not inadmissible because of the objection based upon the ground that they were not shown to be in force. It is not stated in this ground of the motion that as a matter of fact the policies were not in force, and the court will not look to other parts of the record to ascertain the truth of the ground upon which the objection was based. Whether the evidence would have been inadmissible had it been made to appear that the policies were not in force, is not ruled.

6. A trunk and its contents were also offered in evidence and admitted over the objection that it was not stated what was offered in the trunk, and the defendants could not tell what was offered, nor whether it was admissible or not; that the contents of the trunk should have been offered piece by piece, so that the defendant could make her objection to such separate article offered; and because it had not been established by evidence that the trunk had not been tampered with; that its possession had not been accounted for from the time it had been brought out of the house till the sheriff got it; that it was not shown to be in the same condition it was when in defendant's possession. There was evidence from which the jury might find that the trunk was the same one brought from the burning house by the accused, and that its contents were substantially the same. While the evidence offered upon this subject did not exclude the possibility of some one having tampered with the trunk, the jury were authorized to find that it was the trunk of the defendant, and that its contents were the same as when it was brought from the burning house.

7. During the argument of the solicitor-general he took from the trunk just referred to a silken undergarment worn by women,

and exhibited the same to the jury, and told the jury that the defendant wore finer clothes than his wife or any of theirs, and referred to the defendant as a negro woman, and exhibited the clothes as those of a negro woman. Immediately thereupon the defendant moved for a mistrial, on the ground that this act on the part of the solicitor-general would necessarily prejudice the minds of the jury against the defendant, and for the reason that the clothes exhibited were not in any way illustrative of the guilt or innocence of the defendant. The court overruled the motion. While we are of the opinion that the court should have interfered and should have instructed the jury not to consider the remarks of the solicitor-general, we do not think these remarks were of such a prejudicial character as to require the grant of a new trial. Of course the remarks were out of place. They may have been intended to cause amusement or hilarity, which should have no place in a solemn trial like that which takes place when one accused of murder is being tried for his life. But this case being for decision by a full bench, three of the Justices, as named in headnote 7, are of the opinion that the verdict should not be set aside because of the improper remarks referred to, while the other three members of the court are of the opinion that a new trial should have been granted upon this ground; and consequently, an affirmance of the judgment of the court below, upon this point, by operation of law, is the result.

8. Error is assigned upon the following charge of the court: " However, in the trial of a criminal charge, and this is a criminal charge, it is incumbent upon the State, and the burden is upon the State, to establish every fact necessary to prove the material allegations of the indictment," for the reason that the evidence showed that the deceased was burned, and the jury, not being familiar with the rules of law, could easily have reached the conclusion, in view of the fact that the deceased was dead and a killing had taken place, that, although it was charged he was killed with a pistol, inasmuch as he was dead and the defendant was charged with his murder, if it was shown that she killed him either by pistol-shots or by burning, they could easily find the defendant guilty." From a reading of the exception it will be seen that the only criticism upon the charge complained of is that it did not go further and charge an additional legal principle and rule. As

has been frequently ruled, the fact that the court did not charge something else, or go further and charge something else, is not good ground of exception to the charge actually given. If some other additional charge should have been given or some further rule should have been stated, and the court failed to give such additional charge or lay down in his instructions to the jury the additional rule, such failure should have been excepted to because of the failure to charge upon that subject or lay down that rule.

9. The court thus defined reasonable doubt: " The words. gentlemen, 'beyond a reasonable doubt,' mean what they necessarily imply; they do not mean an entire absence of doubt, no doubt at all, nor do they mean an entire want of doubt, nor do they mean a whimsical, captious, or factitious doubt, but, as the words imply, a reasonable doubt." The ground of exception to this charge is that the court " did not, in connection with this, state that such a doubt may arise either out of the evidence, or for the want of evidence, or proven circumstances in the case." The exception here is defective upon the grounds indicated in disposing of the exception to the charge dealt with above. Moreover, the charge itself defined reasonable doubt with substantial correctness.

10. The court charged the jury as follows: " Now, gentlemen, you take this case and go through it carefully, weigh the evidence, oral, documentrary, and otherwise, and give to the defendant's statement such weight and credit as you see proper, and when you have reached your conclusion, and so find beyond a reasonable doubt, if indeetl you do so find that this defendant is guilty, let your verdict be couched in some such language as that which the court has given you in charge." This charge is criticised upon the ground that it contained an intimation on the part of the court to the jury that the court expected them to find the defendant guilty. The charge is not open to that criticism.

*Judgment affirmed by operation of law.*

RUSSELL, C. J., dissenting. I think several grounds of the motion are meritorious, but shall only consider one ground. The seventh ground of the amendment to the motion for a new trial, as approved and certified as true by the trial judge, is as follows: " During the argument of the solicitor-general he took from the alleged trunk of the defendant a pair of silk " teddie bears," which is an undergarment worn by women, and exhibited the same to

the jury, and told the jury that the defendant wore finer clothes than his wife, or any of theirs, and referred to the defendant as a negro woman, and exhibited the clothes as that of a negro woman, stating that she wore finer clothes than the jurors' wives or most anybody's else in the court-room. Immediately upon the solicitor-general arguing such facts, and exhibiting such clothes, and making the statement as outlined above, counsel for the defendant moved for a mistrial in the case, for the reason that this act on the part of the solicitor-general could have but one influence, and that would be to prejudice the minds of the jury against this defendant, and for the reason that the clothes exhibited would not in any way illustrate the guilt or innocence of the defendant; and for the solicitor-general to exhibit this item of clothing was an act prejudicial to this defendant, which would necessarily tend, and its only purpose was on the part of the solicitor-general, to prejudice the minds of the jury; which motion the court overruled." In my opinion the court erred in refusing to grant a new trial on this ground of the motion, if for no other reason. The argument of the solicitor-general was not only wholly irrelevant to any issue in the case, but, as insisted by the defendant, it could serve no other purpose than to prejudice the defendant in the minds of the jury and to deprive her of that fair and impartial trial to which she was entitled.

It may be, that, by administering a proper rebuke to the solicitor-general and by cautioning the jury to pay no attention to this portion of the argument of the learned State's counsel, the condition created thereby might have been ameliorated or the incident might even have been entirely obliterated from the minds of the jury; but, so far as appears from the record, the court, by failure to act otherwise than to overrule the motion for a mistrial, tacitly and impliedly sanctioned and enforced the argument of the solicitor-general. In such a situation, when decisive action is imperative to prevent harm, silence must be construed as approval. The defendant was on trial for murder. The trunk and its contents were admitted, as ruled by the court, solely for the purpose, as stated by the solicitor-general, of showing that the defendant had intended to leave immediately, because the trunk was packed, which might or might not be a circumstance of more or less probative value; but the nature and quality of clothes worn by the

defendant could shed absolutely no light upon the question as to whether the accused was the perpetrator of the crime of which she stood charged.

The constitution of this State guarantees a fair and impartial, unbiased, and unprejudiced trial to every person charged with crime; and in my opinion there can be no question that the action of the solicitor-general, complained of in the third and seventh grounds, was highly prejudicial to the accused. In the trial of a negro slave, *Jesse* v. *State,* 20 *Ga.* 156-169, this court said: " It may not be amiss, however, to observe, that while the safety of society requires the faithful prosecution of offenders against the laws, the State does not ask their conviction but upon a calm and dispassionate investigation of the charges against them." Officers of the court should be most careful in the language employed in the argument of State's cases to the jury. It is never necessary to so argue a case as to rouse the passions of a jury. Where counsel in the presence of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. Civil Code, § 4957.

The defendant pursued a method prescribed by law, though if, as above indicated, the judge had not been of the opinion that the injurious effect was incurable, and had adopted some other corrective measure, possibly a new trial might not have been required. " If the error of the judge . . in permitting prejudicial remarks by counsel was not sufficiently cured by instructions of the court to the jury, counsel should have promptly moved for a mistrial." *Livingston* v. *State,* 17 *Ga. App.* 136 (3) (86 S. E. 449). As the statement of the solicitor-general remained unquestioned before the jury, it must be presumed, in the absence of any positive knowledge as to how it affected the jury, to have been prejudicial to the accused. " Improper conduct on the part of counsel in making an unauthorized statement of fact in the hearing of the jury is not to be corrected by 'ruling out' the statement, but by instructing the jury to disregard the same, or by declaring a mistrial if, on account of the grossness or seriousness of the impropriety, the ends of justice so require." *Collins Park &c. R. Co.* v. *Ware,* 112 *Ga.* 663 (37 S. E. 975). " The State, as accuser in a criminal proceeding, does not seek one of its citizens convicted unless the evidence shows his guilt beyond a reasonable doubt; nor

will it permit its prosecuting officer to use any unfair means in the trial, or illegal argument in his address to the jury, to the prejudice of the accused. Where, therefore, a solicitor-general in his address to the jury uses highly improper language not authorized by the evidence or any fair deduction therefrom, and the counsel for the accused objects thereto and moves the court to declare a mistrial, which the court refuses, and exception is taken to the ruling, this court will reverse the judgment and grant a new trial in the interest of justice and of fair and impartial trials." *Ivey* v. *State,* 113 *Ga.* 1062 (39 S. E. 423, 54 L. R. A. 959).