### 70970. DUREN v. THE STATE.
(339 SE2d 394)

CARLEY, Judge.

Appellant appeals from his conviction of conspiracy to violate the Georgia Controlled Substances Act.

The evidence adduced at trial authorized the jury to find that an undercover law enforcement officer arranged to purchase a quantity of cocaine from appellant's alleged co-conspirator, Marty Orr. Orr was to obtain the cocaine from "his people" and deliver it to the officer in a two-stage transaction. However, as soon as the first portion of the cocaine was delivered, Orr was arrested and confessed. Orr was taken to the Sheriff's office, where he made certain telephone calls to a number which he did not provide to the officer. With Orr's knowledge, the calls were recorded by means of a cassette recorder attached to the telephone. The purpose of the calls was to arrange the second phase of the cocaine sale. After Orr and the other party discussed the financial and logistical aspects of the transaction, they agreed to meet at a specified time and place to conduct an exchange. However, law enforcement officers, rather than Orr, attended the scheduled rendezvous. They encountered and arrested appellant, whose physical description had been provided by Orr. Subsequent voice comparison further identified appellant as the party to whom Orr had spoken in the taped telephone conversations.

1. Appellant enumerates as error the denial of his motion to suppress a tape recording of three telephone conversations which were

initiated by Orr.

First of all, we note that the recording and divulging of the telephone conversations was authorized by OCGA § 16-11-66, in that Orr, who initiated the conversations, knowingly acquiesced in the procedure. See *Goodwin v. State*, 154 Ga. App. 46, 50 (1b) (267 SE2d 488) (1980). Additionally, the State laid a proper foundation for the admission of the tape recording. See *Brooks v. State*, 141 Ga. App. 725, 734 (8a) (234 SE2d 541) (1977). However, appellant contends that the recorded conversations took place after the conspiracy had ended, and that evidence thereof thus constituted inadmissible hearsay.

It is true that the hearsay exception codified in OCGA § 24-3-5 provides for the admissibility of declarations of conspirators only so long as those declarations were made during the pendency of the criminal project and that statements made by a conspirator after the enterprise has ended are not admissible against a co-conspirator. *Crowder v. State*, 237 Ga. 141 (227 SE2d 230) (1976); *Wright v. State*, 254 Ga. 484, 487 (330 SE2d 358) (1985). However, assuming without deciding that the instant conspiracy, which from the very outset contemplated a two-stage transaction, was at an end when Orr was arrested and confessed following completion of only the first stage (see *Crowder v. State*, supra at 153), the recorded conversations in the instant case were not thereby rendered inadmissible. Orr's "confession or declaration to the police was not introduced and *Crowder v. State* is, therefore, inapposite. OCGA § 24-3-5 . . . 'does not render a conspirator incompetent to testify as to facts; it simply prohibits a conspirator from testifying as to declarations made by one conspirator outside the presence of, and upon the trial of, another conspirator.' [Cits.]. . . . Voluntary, non-custodial, incriminating statements of defendants are admissible through the testimony of any one who heard the statements. [Cits.] [Orr] heard [appellant's] statements and could have testified to what [he] said. [Orr's] voluntary participation in the recording of the conversations does not alter their basic admissibility[,] as the lawful electronic interception of the conversations only created a recording of what [Orr] could have related as a witness." *Ramsey v. State*, 165 Ga. App. 854, 858 (4) (303 SE2d 32) (1983). The trial court did not err in denying appellant's motion to suppress the tape recording.

Since the challenged evidence was properly admitted, it follows that the trial court did not err in denying appellant's motion to strike.

2. Appellant further asserts that the trial court erred in allowing transcripts of the recorded conversations to be furnished to the jury and in failing to instruct the jury that "the tapes rather than the transcripts [were] evidence."

The transcripts were properly furnished to the jury, a proper foundation having first been laid. See *Brooks v. State*, supra at 736

(9); *Ledford v. State*, 173 Ga. App. 456, 457 (4) (326 SE2d 819) (1985). The prosecutor expressly stated the limited purpose of the transcripts at the time their admission was sought. As for the trial court's failure to give instructions concerning the limited purpose of the transcripts, it does not appear that any request for such instructions was made, or that there was any objection or exception regarding the failure so to instruct. The charge, as given, fully and fairly covered the issues presented in the case, and there was no omission to charge that was clearly harmful or erroneous as a matter of law. We find that the failure to give, without request, an instruction as to a collateral issue was not reversible error. See *Grier v. State*, 173 Ga. App. 739 (327 SE2d 849) (1985).

3. Over hearsay objections, the undercover officer testified to the following: the nature of the officer's contact with alleged co-conspirator Orr; Orr's explanation of where he procured the cocaine and his failure to indicate the number of persons involved in the drug operation; and certain logistical aspects of the exchange of money and drugs. The challenged evidence involved actions and statements made in furtherance of the criminal enterprise, prior to Orr's arrest. To the extent the officer's testimony was hearsay, it was clearly admissible pursuant to OCGA § 24-3-5. See *Hendrixson v. State*, 167 Ga. App. 517, 518 (21) (306 SE2d 350) (1983). The order of the State's proof of the existence of a conspiracy is not challenged on appeal.

Appellant further objected to the officer's testimony concerning certain statements made by Orr after his arrest and confession. The officer testified that the purpose of Orr's in-custody telephone calls was to arrange a meeting to provide purchase money to the person from whom Orr had acquired the first batch of cocaine. The officer also testified to Orr's description of his co-conspirator's physical characteristics.

Even if, as noted earlier, the conspiracy was already at an end, apparently at no time in his post-arrest statements to the officer did Orr ever specifically identify appellant by name as his co-conspirator, but limited his information to a physical description of his co-conspirator and to a statement that his co-conspirator would be at the designated rendezvous site at a specified time. During the taped conversations themselves, Orr referred to the party to whom he was speaking only as "Ken." Accordingly, Orr's post-arrest statements were admissible to explain the officer's subsequent conduct in identifying and arresting appellant, who matched the physical description given by Orr and who was present at the appointed site at the indicated time. Only after appellant's arrest was his identity as Orr's co-conspirator further corroborated by voice comparison with the taped conversations. "The identity of the [co-conspirator] being relevant to the issues on trial, the trial court correctly admitted the officer's conversa-

tion with [Orr] in order to explain the officer's subsequent conduct. [Cits.]" *Fowler v. State*, 171 Ga. App. 491, 493 (320 SE2d 219) (1984). "The circumstances of the arrest were certainly 'relevant to the issues on trial' as required by *Momon* [*v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982)]. [Cits.]" *Cheney v. State*, 167 Ga. App. 757, 758 (307 SE2d 288) (1983).

4. Appellant enumerates as error the denial of his motion for a directed verdict of acquittal. However, the evidence adduced at trial sufficiently established all of the elements of the crime of conspiracy as defined by OCGA § 16-4-8. The tape-recorded telephone conversations, during which the other party was identified as "Ken," demonstrated that Orr and "Ken" had conspired to participate in the sale of cocaine. The voice of "Ken" on the tape was identified as appellant's, and appellant appeared at the site of the scheduled rendezvous in accordance with the arrangements made over the telephone. These circumstances, coupled with Orr's overt act of transferring the first portion of the cocaine to the undercover officer, authorized the jury to infer the existence of a conspiracy in which appellant was a participant. See *Stroud v. State*, 154 Ga. App. 852 (2) (270 SE2d 69) (1980); *Garmon v. State*, 122 Ga. App. 61 (1) (176 SE2d 218) (1970); *Tookes v. State*, 159 Ga. App. 423, 427 (8) (283 SE2d 642) (1981). Moreover, contrary to appellant's contentions, the transfer of the first portion of the cocaine did not complete the object of the conspiracy so as to bar appellant's conviction of the conspiracy itself. See generally *Scott v. State*, 229 Ga. 541, 544 (1) (192 SE2d 367) (1972). The evidence was undisputed that the sale of the cocaine was to occur in two transactions, and that the second transfer was not completed. "As we find the evidence sufficient to authorize a rational jury to find [appellant] guilty beyond a reasonable doubt, 'it could hardly be found to demand a verdict of acquittal.' [Cit.]" *Ramsey v. State*, supra at 859 (6).

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED JANUARY 6, 1986.

*William I. Sykes, Jr.*, for appellant.
*Bruce L. Udolf, District Attorney, Donald T. Hunt, Assistant District Attorney*, for appellee.